Donald **BUFORD** et al., Plaintiffs-Appellants,

v.

The **SOUTHEAST DUBOIS COUNTY SCHOOL CORPORATION,**
Defendant-Appellee.

No. 72–1018.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1972.

Decided Jan. 25, 1973.

Certiorari Denied May 7, 1973.
See 93 S.Ct. 2151.

Fremont O. Pickett, Shoals, Ind., Russell S. Armstrong, John D. Clouse, Evansville, Ind., for plaintiffs-appellants.

William M. Evans, Lewis C. Bose, Indianapolis, Ind., for defendant-appellee.

Before STEVENS and SPRECHER, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

---

[*] Senior District Judge William J. Campbell of the Northern Distirct of Illinois is sitting by designation.

STEVENS, Circuit Judge.

In October 1970, defendant School Corporation decided to close the public high school in Birdseye, Indiana, and to transfer the students to a larger and newer school in Ferdinand commencing with the 1971–1972 academic year. The Ferdinand facility had formerly been a Catholic school and was leased by defendant from the Evansville diocese. Plaintiffs,[1] Protestant taxpayers and parents from Birdseye, opposed the transfer of their children into the Catholic environment of Ferdinand. In August of 1971 they sought to enjoin the closing of the Birdseye High School, invoking the Establishment Clause of the First Amendment as a basis for federal jurisdiction.[2] The district court refused to enjoin the closing of the Birdseye school, but did order certain changes at Ferdinand. Plaintiffs appeal, contending that no relief short of reopening the Birdseye school, is adequate. The district court's findings demonstrate that such drastic relief is not justified; we therefore affirm.

The Birdseye High School accommodated 104 students in a building constructed before 1900, containing seven rooms, a former office used as a library, a kitchen and a small cafeteria. The school had no toilet or locker facilities. The residents of Birdseye are primarily Protestants. As a result of the closing their children are now attending Forest Park High School in Ferdinand, a larger community with a predominantly Catholic population.

Forest Park High School[3] accommodates 545 students in a facility described by the court as "modern." It was constructed by the Catholic Diocese of Evansville and operated as a parochial school until 1965, when it was leased to the local school authority and converted into a public high school.[4] The change from parochial to public school in 1965 did not immediately eliminate the strong Catholic atmosphere, but apparently no serious problems then arose since the student body was predominantly, if not totally, of the Roman Catholic faith.

Between 1965 and the closing of Birdseye in 1971, the Catholic influence at the Ferdinand school was mitigated in various ways. Religious services and classes were discontinued, religious paintings and artifacts were removed, a Protestant principal and a Protestant guidance director were employed, the number of nuns serving as teachers was reduced, the relative number of Catholic volumes and periodicals in the library was lessened, and the name of the school, its colors and mascot were changed. Plaintiffs' evidence related, in part, to conditions which prevailed before these changes were made. In considering their entitlement to broader relief than the court granted, we limit our attention to the situation as it existed during the 1971–1972 academic year. They contend that the religious orientation of the Ferdinand faculty and surroundings inevitably creates an impermissible violation of their First Amendment rights. Their concern is buttressed by the following facts.

All five members of the Board of the School Corporation are Catholics; since approximately 80% of the voting population in the area is Catholic, Catholic domination of the Board will presumably persist. The high school itself is owned by the Evansville Diocese. It is located near a Catholic convent; religious statuary and other Catholic buildings are also nearby. The 28 teachers on the high school faculty include 16 Catholics, eight of whom are nuns. Prior to the conclusion of the trial, the nuns wore their habits while teaching. The library con-

1. The complaint was originally filed by 141 plaintiffs.

2. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . . . ." U.S.Const. Amend. I.

3. Before consolidation, it was known as "Ferdinand High School."

4. Finding No. 5.

tains about 20 Catholic periodicals and a relatively large number of books oriented toward Catholic teaching. A number of paintings in the school depict religious themes. Certain portions of the record also suggest that some members of the faculty had a "Catholic attitude" and that occasional comments by Catholic students made some of the Protestant newcomers uncomfortable.

On the other hand, the court found that careful and cooperative planning by the students themselves minimized the conflict that might otherwise have developed in connection with the consolidation.[5] He recognized that plaintiffs' concerns were genuine and directed that remedial steps be taken. Specifically, he ordered the nuns to discontinue wearing their habits while teaching. He "recommended" that the library maintain a more balanced list of books and periodicals, and "that paintings or art reproductions exhibited in the school not be predominantly of religious scenes or religious in meaning, but that the collection of reproductions of other painters and sculptors, both ancient and modern, be expanded." Finding No. 7.

Defendants have not challenged either the order or the recommendations; plaintiffs have not made any request for additional relief other than a mandate directing that the old school at Birdseye be reopened. We are satisfied that the district court acted properly in rejecting this extreme sanction.

The evidence abundantly establishes the reasonableness of the decision to close the old facility at Birdseye; the consolidation was certainly within the Board's power. We accept the sincerity of plaintiffs' concern about the assimilation of their children into a group of students predominantly of a different faith and recognize that subtle influences may be impermissible even though difficult to prove by objective evidence.[6] Nevertheless, we are persuaded that the appropriate remedy in this case lies not in the direction of a return to the outdated facility at Birdseye, but rather in the direction of unambiguous and vigilant enforcement of the commands of the First Amendment at the modern, integrated school in Ferdinand. Indeed, if the manner in which the Ferdinand school is operated violates the Establishment Clause, the reopening of Birdseye would, instead of terminating the violation, probably perpetuate it.

The judgment is

Affirmed.

---

5. "4. During the winter and spring of 1971, the student councils of the high schools at Ferdinand and Birdseye, Indiana, held at least five joint meetings, and several 'mixers' and proposed to the School Board, as a result of these joint meetings a new name for the school ('Forest Park High School'), new school colors, mascot, and song, all of which were adopted by the School Board of the School Corporation. Perhaps because of this cooperation between the students of the two high schools, the consolidation of the two high schools was carried out quite successfully, since schools [sic] opened this fall and no student or parent objected or complained to school officials to this consolidation in any way.

"The Court is impressed at this display of cooperation between the high school students fom Birdseye, Indiana, predominantly Protestant, and the other high school students of the School Corporation, predominantly Roman Catholic. The Court can only hope that this display of cooperation may serve to reassure parents and citizens in other school corporations in Indiana who are faced with similar problems relating to the integration of school facilities, which may be required under the authority of Brown v. The Board of Education, 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873], and subsequent decisions of the United States Supreme Court." Finding No. 4.

6. Cf. Lemon v. Kurtzman, 403 U.S. 602, 618–619, 91 S.Ct. 2105, 29 L.Ed.2d 745.